E-FILED
Wednesday, 25 November, 2026 10:58:54 AM
Clerk, U.S. District Court, ILCD

**IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | |
|---|---|
| MARK S. HORN,<br>Plaintiff,<br><br>v.<br><br>ELIZABETH M. WHITEHORN, BRYAN E. TRIBBLE, LORA KELLER, LISA CORLEY, and MAKISHA POLLARD, in their individual and official capacities; CHAMPAIGN COUNTY, ILLINOIS; ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES; JOHN DOE SHERIFF'S DEPUTY, in his individual capacity; and JOHN/JANE DOES 1-10 in their individual and official capacities,<br>Defendants. | Case No. 2:26-cv-02128-JEH-RLH |

**Opinion & Order**

Now before the Court are Defendants Lora Keller and Champaign County, Illinois's 12(B)(1) and 12(B)(6) Motion to Dismiss (D. 28), Defendants Elizabeth Whitehorn, Bryan Tribble, Lisa Corley, Makisha Pollard, and the Illinois Department of Healthcare and Family Services' Motion to Dismiss Plaintiff's Complaint (D. 33), and Plaintiff Mark S. Horn's Emergency Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Fed. R. Civ. P. 65 and Request for Expedited Hearing (D. 46) and Motion for Leave to File a Reply in Support of His Emergency Motion for Temporary

Restraining Order and Preliminary Injunction (D. 49).[1] For the reasons set forth *infra*, the Defendants' Motions to Dismiss are GRANTED and the Plaintiff's Emergency Motion and Motion for Leave to File a Reply are MOOT.

**I**

Plaintiff Mark S. Horn filed his Amended Complaint (D. 4) on May 7, 2026 against Defendants Elizabeth M. Whitehorn, Bryan E. Tribble, Lora Keller, Lisa Corley, and Makisha Pollard in both their individual and official capacities, Champaign County, Illinois, the Illinois Department of Healthcare and Family Services (IDHFS), John Doe Sheriff's Deputy in his individual capacity, and John/Jane Does 1-10 in their individual and official capacities. He included 10 counts: six counts (Counts I-IV, IX, X) pursuant to 42 U.S.C. § 1983 for violation of his Fourteenth Amendment due process rights; one count (Count V) pursuant to 42 U.S.C. § 1983 for "failure to provide accurate accounting and comply with federal support distribution requirements"; one count (Count VI) pursuant to 42 U.S.C. § 1983 claiming "Monell municipal liability"; one count (Count VII) pursuant to 42 U.S.C. § 1983 claiming supervisory liability; and one count (Count VIII) pursuant to Illinois common law for equitable restitution and accounting.

Specifically, Plaintiff Horn alleges[2] that in February 2009, the IDHFS caused a default child support order to be entered against him following service at two locations: one being a commercial retail location and another at an apartment where he never resided. Defendant John Doe, a Champaign County Sheriff's Deputy, executed a Return of Service, stamped received on February 10, 2009, indicating neither personal nor

---

[1] Citations to the electronic docket are abbreviated as "D. ___ at ECF p. ___."

[2] Whether in the context of Federal Rule of Civil Procedure 12(b)(1) or (b)(6), a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (internal citation omitted); *see also Bronson v. Ann & Robert H. Lurie Child.'s Hosp. of Chi.*, 69 F.4th 437, 448 (7th Cir. 2023) (providing that at the motion to dismiss stage, a court "accept[s] the well-pleaded facts in the complaint as true and draw[s] reasonable inferences in the plaintiff's favor[]").

substitute service. IDHFS subsequently caused an Administrative Process Affidavit of Delivery to be executed, certifying that notice was mailed by regular mail only on February 18, 2009 to an address which was not the Plaintiff's residence but was instead the apartment complex where his mother resided.

No documentation was ever provided to Plaintiff Horn explaining how the original child support amount was calculated, and to this day, he does not know how the State of Illinois determined the amounts collected from his wages since 2009. Plaintiff Horn did not appear at the administrative proceeding because he did not receive notice. He did not discover the February 2009 service until November 2024 when Defendant Keller, Assistant State's Attorney for Champaign County, Illinois, provided Horn with the Sheriff's Process Return and related documentation in connection with a registration proceeding initiated after Horn sought assistance from the Illinois Attorney General's Office. Prior to November 2024, the Plaintiff attempted to challenge the enforcement of his child support obligation through available channels; he pursued an administrative appeal in Cook County, Illinois, but no hearing was ever conducted and the Defendants failed to reschedule, and he sought relief through the courts but was informed that jurisdiction did not lie over the administrative enforcement proceedings.

An Administrative Support Order (Modified) was entered on March 7, 2016, "backdated" to October 30, 2015, setting current child support. The "record" contains no valid notice to Plaintiff Horn of the modification proceeding and no supporting documentation, including any calculation worksheet associated with that Modified Order. Beginning in April 2016, the Plaintiff's wages at Rantoul Foods were garnished pursuant to enforcement actions associated with the March 2016 Modified Support Order. Beginning December 23, 2022, IDHFS resumed wage withholding from the Plaintiff's wages at Logansport State Hospital in Indiana. The Plaintiff was not provided notice of either of those withholding actions.

On November 21, 2024, Defendant Whitehorn, Director of IDHFS, executed a Certificate of an Administrative Support Order for purposes of registration in the state circuit court. The certificate identified October 17, 2022 as the entry date of the original order, and it further referenced an Administrative Paternity Order dated October 17, 2022 which "does not appear anywhere in the 561-page certified common law record." Director Whitehorn thereby certified the existence of a nonexistent official document and submitted that certification to a court of law. No supporting worksheet or documentation appears in court or agency files for any modification order.

Payroll and employer documents from 2015 through 2018 confirm that Plaintiff Horn's wages were subject to recurring garnishment under a support order for his son, Z.A. During the same period, the Plaintiff's payroll records reflect two distinct and simultaneous wage garnishments under separate child support orders – the first for Z.A.'s child support and the second for Plaintiff's daughter D.S.'s child support. The Plaintiff was also supporting his other son, S.H., for whom no formal support order existed at the time. Nevertheless, S.H. was not considered by the Defendants in calculating or enforcing the Plaintiff's child support obligations. No record provided to Horn reflects that IDHFS or the administrative tribunal considered the existence of multiple simultaneous garnishments or the combined withholding total when determining or enforcing Z.A.'s support order. IDHFS NCP Payment and Balance Reports do not consistently match Plaintiff Horn's employer payroll deductions, and similar discrepancies were present across multiple years. In both 2015 and 2017, the Defendants did not provide documentation explaining modifications, allocation of payments, or the basis for amounts reported. IDHFS NCP Payment and Balance Reports do not clearly explain changes in Horn's support obligations.

Despite the Plaintiff's continuous compliance with the court-ordered health insurance requirement for Z.A., the

Defendants did not credit Horn's premium costs against his child support obligation or account for the costs in calculating arrearages. The December 10, 2025 Amended Income Withholding Order included no offset for the health insurance coverage that Horn was providing. Upon information and belief, Defendants Whitehorn, Tribble (Executive Administrator of the Division of Child Support Services within IDHFS), and Keller relied on incomplete, delayed, or inaccurate payment histories when presenting Horn's account to courts and administrative bodies, and, as a result, his arrearages were increased.

Defendant Keller repeatedly submitted records that were outdated, incomplete, or materially misleading; she provided no reconciliation, accounting explanation, or supporting documentation to explain why she relied upon an older, less complete report in three separate court filings and provided no explanation for discrepancies that appeared. Defendant Keller mailed to Plaintiff Horn a Section 1-109 certification form for signature without providing adequate disclosure regarding its legal significance or intended use, and Keller subsequently attached Horn's obtained signature to a registration filing submitted to the state circuit court without Horn's notice or opportunity to object.

Defendant Pollard was the IDHFS Child Support Professional assigned to manage Plaintiff Horn's administrative appeal while Defendants Whitehorn and Tribble, as supervisory officials, had oversight responsibility for the appeal process. At all relevant times, the Defendants were aware that Horn was actively attempting to participate in the administrative process, despite Horn receiving no call from the agency and neither Horn nor his attorney being contacted.

While Plaintiff Horn's administrative appeal remained "unresolved," he sought relief in the Circuit Court of Champaign County, Illinois. On April 4, 2023, Horn filed a motion in a related family matter seeking to address ongoing child support enforcement and garnishment issues. At the May 19, 2023 hearing, the Plaintiff appeared *pro se* and

Defendant Keller appeared and represented to the court that it lacked jurisdiction over Horn's claims and that Horn was to pursue relief through the administrative process. The state court adopted that position and declined to provide Horn relief, stating it did not have jurisdiction over administrative child support enforcement matters.[3] At the time Horn was directed back to the administrative process, the Defendants had already failed to conduct scheduled administrative hearings and had failed to correct known contact information errors in Horn's case.

Defendant Corley, in her capacity as Office Administrator at the IDHFS Champaign Regional Office, was responsible for case classifications and processing modification requests related to Horn's account. The Defendants did not provide Horn with documentation identifying the basis for the continued maintenance of a foster care classification for Z.A., how any associated balance was calculated, the source of the funds used to satisfy any associated balance, or how transactions were applied to Horn's account. Upon information and belief, the Defendants failed to maintain accurate classifications and accounting practices, resulting in confusion regarding Horn's account status and impairing his ability to verify, challenge, or correct the amounts attributed to him. The continued maintenance of a foster care case file with an active payment history, certified as accurate by Defendant Tribble, and the Defendants' representation that the foster care

---

[3] The Plaintiff's Exhibit Q2, separately filed as an exhibit to his Amended Complaint, is a transcript of the May 19, 2023 hearing. The transcript provides Judge Ramona M. Sullivan explained:

> As far as your request for me at this time or a judge in Champaign County Circuit Court at this time to get involved in an unresolved administrative dispute that you have going on with Department of Healthcare and Family Services, I don't have jurisdiction at this stage to do that. Once that process is complete and you have a decision from the administrative body, if you disagree with that, then you can seek administrative review in circuit court, but it's not determined yet.

(D. 6 at ECF p. 215).

case was closed in 2012 demonstrates the unreliability of the records upon which Defendants based their enforcement actions against Horn.

Horn's efforts have been met with conflicting orders and lack of documentation together with the Defendants' failure to provide an accounting, no offset for health insurance costs, and no reduction for insurance costs borne by Horn. The Defendants have not provided a reconciliation demonstrating how child support arrearages that were carried forward were calculated.

On or about February 28, 2025, IDHFS issued a Notice of Intent to Pursue Collection Remedies addressed to Plaintiff Horn asserting that he owed past-due child support as of that date. At the time the Notice was issued, the Defendants were actively garnishing his wages and had been doing so continuously since December 23, 2022. Such conduct, without any reconciliation, accounting, or explanation of how the stated arrearage was calculated in light of ongoing collections demonstrates the Defendants' pattern of maintaining and enforcing inaccurate records and pursuing duplicative collection remedies against Plaintiff Horn.

On or about April 17, 2026, IDHFS mailed Horn an Employer Information Request directing him to report employment information, though at the time of the request, the Defendants were already actively garnishing Horn's wages from his employer, Ascension St. Vincent, pursuant to an Income Withholding Order dated September 19, 2025. The Defendants' simultaneous demand for employment information (already reflected in their own records) and continued enforcement of withholding and case processing (related to impending termination of the obligation) reflects inconsistent and unreliable administration of Plaintiff Horn's account. On April 21, 2026, IDHFS issued a Monthly Billing Statement of Child Support Account addressed to Horn confirming receipt of a payment. The issuance of the Billing Statement which confirmed Horn's employment and payment activity within the same week as a demand for that same

information, accompanied by threats of federal tax intercepts, passport revocation, license suspension, and credit reporting demonstrates the arbitrary and internally inconsistent nature of the Defendants' enforcement conduct.

**II**

On July 31, 2026, Defendants Keller and Champaign County, Illinois filed their Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), and on August 7, 2026, Defendants Whitehorn, Tribble, Corley, Pollard, and IDHFS likewise filed their Motion to Dismiss pursuant to Rule 12(b)(1) and (b)(6). Defendants Keller and Champaign County, Illinois seek dismissal of Plaintiff Horn's Amended Complaint against them for several reasons, including immunity and jurisdictional bars. Defendants Whitehorn, Tribble, Corley, Pollard, and IDHFS similarly seek dismissal of Plaintiff Horn's Amended Complaint against them for lack of subject matter jurisdiction and failure to state a claim.

Federal Rule of Civil Procedure 12(b)(1) provides a complaint may be dismissed for lack of subject-matter jurisdiction, while Federal Rule of Civil Procedure 12(b)(6) provides a complaint may be dismissed for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(1), (6). The Court must first consider Rule 12(b)(1) challenges. *See Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (providing that a court is required to consider subject matter jurisdiction "as the first question in every case[]").

**III**

Defendants Keller and Champaign County argue both the *Rooker-Feldman* doctrine and *Younger* abstention preclude federal jurisdiction in this case, and the State Defendants argue *Rooker-Feldman* and the domestic relations exception to federal jurisdiction bar Plaintiff Horn's claims. In the context of a facial challenge to subject matter jurisdiction pursuant to Rule 12(b)(1), as here, the court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha*, 807 at 173. Additionally, *pro*

*se* complaints must be construed liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (providing that a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers").

A federal court's "threshold question – even before the question of whether a court should abstain – is whether the federal action threatens to interfere with or intrude upon a state court proceeding." *Richwine v. Matuszak*, 148 F.4th 942, 951 (7th Cir. 2025) (quoting *Vega v. Chi. Bd. of Educ.*, 109 F.4th 948, 957 (7th Cir. 2024)). Here, the entirety of the Plaintiff's allegations stem from his child support obligation, with proceedings happening (and attempted) at the state administrative level as well as in Illinois state court. Thus, the Court considers the domestic relations exception to federal jurisdiction which focuses "on the need to prevent federal courts from disturbing or affecting the possession of property in the custody of a state court." *Kowalski v. Boliker*, 893 F.3d 987, 995 (7th Cir. 2018) (internal citation omitted). "The Seventh Circuit and district courts within the Seventh Circuit have repeatedly held that the domestic relations exception bars claims where the plaintiff in effect asks for relief from child support obligations." *Davis v. Tribble*, No. 4:26-cv-04150-SLD-RLH, 2026 WL 2086020, at *2 (C.D. Ill. July 20, 2026) (collecting cases); *see also Syph v. Arce*, 772 F. App'x 356, 357 (7th Cir. 2019) (unpublished opinion) ("Syph's suit, which raises federal- and state-law challenges to his child-support obligations, falls squarely within the domestic-relations exception. Such obligations are part of the typical divorce decree, which the 'federal courts are not well suited' to supervise.") (quoting *Lloyd v. Loeffler*, 694 F.2d 489, 492 (7th Cir. 1982)).

Plaintiff Horn insists the domestic relations exception does not apply here because he does not ask this Court to set a support amount, adjudicate custody, or substitute its judgment for any state court's domestic relations determination. He says, instead, he alleges, among other things that: IDHFS, not a court, entered a default order

without constitutionally adequate service (back in 2009); IDHFS's "own scheduling errors twice misdirected hearings Plaintiff was entitled to"; and state officials relied on internally contradictory service and payment records to enforce that order. Pl.'s Opp'n (D. 37 at ECF p. 11).

However, the Plaintiff alleges throughout his Amended Complaint that he was not provided sufficient documentation and/or explanation as to how his child support obligation for Z.A. was calculated or how his arrearages were determined. In his Prayer for Relief, Plaintiff Horn requests, among other things: the Court declare the Defendants' actions including reliance on inaccurate or incomplete records violated Horn's rights under the Due Process Clause of the Fourteenth Amendment; the Court enter appropriate declaratory and injunctive relief requiring the Defendants to provide a complete and accurate accounting of his child support obligations, credits, and distributions and maintain accurate case classifications and records, including correction of any erroneous foster care coding; the Court order the Defendants to correct his record to reflect all verified payments made and to reflect appropriate credits, including court-ordered health insurance contributions where applicable; and the Court to order prospective compliance and recalculation of withholding amounts consistent with federal law. Pl.'s Am. Compl. (D. 4 at ECF pp. 43-44).

In other words, the entire thrust of the Plaintiff's Amended Complaint pertains to his child support obligation, and he essentially challenges enforcement of that obligation. The domestic relations exception precludes this Court from exercising its jurisdiction over the Plaintiff's Amended Complaint. *See Camarda v. Whitehorn*, No. 24-3244, 2025 WL 1121599, at *1 (7th Cir. Apr. 16, 2025) ("We agree with the district court that the [domestic relations] exception applies here, given that the relief [the plaintiff] seeks—damages for financial harm caused by the defendants' collection of child support; injunctive relief to prevent DHFS from collecting child support; and declaratory relief to prevent future enforcement

of the state-court proceedings—would encroach on the state court's adjudication of family law matters."); *Rodriguez v. Lancaster Grant Cnty. Child Support Agency*, No. 23-cv-755-wmc, 2024 WL 3924576, at *2 (W.D. Wis. Aug. 23, 2024) ("Despite plaintiff's efforts to make this case about his Fourteenth Amendment due process rights, he does not allege facts signaling the existence of a substantial federal question that is separate from his obligation to make child support payments. On the contrary, his claims, such as they are, (1) arise directly out of child support obligations, and (2) involve no federal question."). Plaintiff Horn "cannot escape such a characterization [that this is not a matter regarding child support] merely by declaring it so." *Savelskas v. Tribble*, No. 25 C 3000, 2026 WL 509215, at *1 (N.D. Ill. Feb. 24, 2026).

Thus, while the Court need not delve into application of the *Rooker-Feldman* doctrine nor *Younger* abstention, the Court notes that general abstention principles also dictate the outcome that this Court abstain from exercising jurisdiction over Plaintiff Horn's due process claims. The Court notes that the Plaintiff explicitly alleges in his Amended Complaint that "an appeal may be pending in the Illinois Appellate Court (Case No. 5-25-0598)[.]" Pl.'s Am. Compl. (D. 4 at ECF p. 25). In fact, the most recent entry on the docket in that case, *Aker v. Horn*, 5-25-0598 (Ill. App. Ct.), indicates that on September 18, 2026, the Illinois Appellate Court denied Horn's motion "to place appeal on accelerated docket pursuant to Illinois Supreme Court Rule 311(b)[.]" Horn's state court appeal, filed July 28, 2025, remains pending at this time. *See* FED. R. EVID. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) ("The most frequent use of judicial notice of ascertainable facts is in noticing the contents of court records.") (internal citation omitted). Just as the Seventh Circuit reasoned in *J.B. v. Woodward*, this Court is left "with the clear and unmistakable impression" that

Plaintiff Horn seeks a favorable federal court judgment he can use to influence ongoing state court decision making which runs "contrary to the equity, comity, and federalism principles underlying [the Seventh Circuit's] abstention doctrines[.]" 997 F.3d 714, 721 (7th Cir. 2021).

The Court will not address the Defendants' additional arguments in support of dismissing the Plaintiff's Amended Complaint.

In keeping with the presumption "that the court will relinquish federal jurisdiction over any supplemental state-law claims" once a district court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiff Horn's Count VIII pursuant to Illinois common law for equitable restitution and accounting. *RWJ Mgmt. Co., Inc. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012).

**IV**

Because the Court is precluded from exercising jurisdiction over the Plaintiff's Amended Complaint, the Court cannot and will not entertain the Plaintiff's Emergency Motion for Temporary Restraining Order. The Court notes, however, that the Plaintiff's opening paragraph of his Emergency Motion underscores the fact that he clearly seeks federal court encroachment on the state court's application of family law. *See* Pl.'s Emergency Mot. (D. 46 at ECF pp.1-2) ("[Plaintiff] seeks protection against continued wage withholding while the validity, accuracy, and procedural foundation of the claimed arrearage and of the withholding itself remain disputed.").

**V**

For the reasons set forth *supra*, Defendants Lora Keller and Champaign County, Illinois's 12(B)(1) and 12(B)(6) Motion to Dismiss (D. 28) is GRANTED, Defendants Elizabeth Whitehorn, Bryan Tribble, Lisa Corley, Makisha Pollard, and the Illinois Department of Healthcare and Family Services' Motion to Dismiss Plaintiff's Complaint (D. 33) is GRANTED, and Plaintiff Mark S. Horn's Emergency Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Fed.

R. Civ. P. 65 and Request for Expedited Hearing (D. 46) and Motion for Leave to File a Reply in Support of His Emergency Motion for Temporary Restraining Order and Preliminary Injunction (D. 49) are MOOT. The domestic relations exception precludes the Court from exercising jurisdiction over Plaintiff Horn's case. Plaintiff Horn's Amended Complaint (D. 4) is accordingly DISMISSED WITHOUT PREJUDICE to allow Horn to raise his claims in the proper tribunal. The Clerk is directed to enter judgment and close this case.

*It is so ordered.*

Entered on November 25, 2026

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE